**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

---

| | |
|---|---|
| AMANDA BRYANT, an individual, *on behalf of herself and all others similarly situated,* ) ) | Case No. |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | **CLASS ACTION COMPLAINT** |
| ) | |
| PREMIUM SEATS USA, LLC, ) | **JURY TRIAL DEMANDED** |
| ) | |
| DEFENDANT. ) ) | |

---

## CLASS ACTION COMPLAINT

Plaintiff, Amanda Bryant ("Plaintiff"), by and through her undersigned counsel, brings this Class Action Complaint against Defendant, Premium Seats USA, LLC ("Premium Seats" or "Defendant"), and alleges as follows, based upon information and belief, except as to the allegations specifically pertaining to her, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Defendant is a "licensed ticket and hospitality agency featuring an online ticket exchange that connect you to the most sought after sports, concert and theater tickets nationwide."[1] The market operates primarily through Defendant's website, www.premiumseatsusa.com (the "Premium Website").

2. On the Premium Website, sellers list tickets for sale to events such as, among other things, sporting events, concerts, and theater events. Buyers can find these tickets and purchase

---

[1] https://www.premiumseatsusa.com/about-us

1

them directly through the Premium Website. Defendant charges a fee to both the buyers and sellers for use of Premium's services.

3. This is a class action lawsuit on behalf of all persons who purchased tickets through Defendant, and who were deprived of the benefit of Defendant's refund policy when, in response to the Coronavirus Disease 19 ("Covid-19") pandemic, events were cancelled or constructively cancelled.

4. Defendant has quietly sought to force the buyers to endure the financial loss of the event cancellation instead of issuing refunds pursuant to the Premium Seats' Website's terms and conditions ("Terms") and implied good faith and fair dealing therein.

5. Defendant's uniform conduct in withholding refunds is equally applicable to Plaintiff and the Class. Plaintiff brings this class action against Defendant for: (i) breach of contract; (ii) breach of implied contract; (iii) conversion; and (iv) unjust enrichment.

6. Plaintiff seeks an order requiring Defendant to, among other things: (i) enforce the Terms and communications regarding refunds displayed on the Premium Website; and (ii) pay damages and restitution to Plaintiff and Class members.

## PARTIES

7. Plaintiff Amanda Bryant is an adult individual and is a resident and citizen of the State of Tennessee.

8. Defendant, Premium Seats USA, LLC, is a Florida limited liability company headquartered, and with its principal place of business, in Fort Lauderdale, Florida, and is a citizen of the State of Florida. Premium Seats can be served through its registered agent: Craig M. Dorne, PA, at 3132 Ponce de Leon, Coral Gables, Florida 33134.

## JURISDICTION AND VENUE

9. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because Plaintiff and at least one member of the Class is a citizen of a different state that Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

10. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

11. Venue is proper in this Court pursuant to 28 U.S.C. 1391 because Defendant resides in this District.

## FACTUAL BACKGROUND

12. For years, in the process of building a marketplace in which consumers would be comfortable paying substantial prices, often beyond face-value, for event tickets from strangers on the internet, Premium Seats relied on its Terms that allow for a seamless refund upon cancellation of an event, which was incorporated into its various user agreements and marketed to prospective customers.

13. The Terms promised that if a Premium Seats user purchased tickets to any event through Premium Seats, and the event was cancelled, the user would receive a full, money-back refund for their purchase.

14. To avoid financial losses, and potential future losses, due to the Covid-19 pandemic, Defendant has unconscionably and in breach of the implied covenant of good faith and fair dealing refused to issue refunds for events that were cancelled, or wrongfully categorized events as re-scheduled in order to avoid refunds.

*Premium Seats Online Ticket Marketplace*

15. Premium Seats is a secondary ticket marketplace that connects ticket sellers with buyers.

16. Premium Seats requires all prospective sellers to register through its Premium Website in order to receive payments from Premium Seats.

17. During registration, sellers provide certain ticket information, including list price, and can post the tickets for sale to the Premium Seats online marketplace, where buyers can view and purchase the tickets.

18. Once a purchase is completed, Premium Seats charges the buyer and the seller a fee. The seller is charged a 15% "management fee."[2]

19. Premium Seats charges buyers a service fee and delivery fee in addition to the ticket price.[3]

20. Buyers also are required to register with Premium Seats in order to purchase tickets.

21. The vast majority of tickets are available to buyers through instant download or email delivery, and require no physical delivery.

*The Premium Seats Refund Policy*

22. Premium Seats' online ticket marketplace is made possible by the promise, or perception, that it is a viable, protected medium through which buyers can obtain event tickets in a protected, low-risk environment.

23. A key pillar of the Premium Seats marketplace success is its refund policy, which provides buyers with an assurance that they will not be left with a valueless ticket in the case of an event cancellation.

---

[2] https://www.premiumseatsusa.com/sell-tickets
[3] https://www.premiumseatsusa.com/policy

24. Premium Seats' well-publicized refund policy is clear: Premium Seats promises that customers "will be eligible for a refund associated to the cancelled event tickets."[4]

25. On its Frequently Asked Questions list section of the Premium Website, Defendant advises: "[i]f an event is officially cancelled, we will provide a refund in full for the amount you paid for the tickets."[5]

26. This refund for the cost of the tickets has been Premium Seats' longstanding policy, and its customers relied upon that promise when making ticket purchases.

27. Premium Seats intends for its customers to rely on the refund policy when making purchases, as it knows that much cheaper tickets are available directly to its customers through other mediums, including cash sales outside of venues and direct buyer to seller marketplaces.

28. Because of the availability of the refund, Premium Seats users are willing to pay premium prices for tickets, and to pay substantial fees to Premium Seats on top of the ticket price, even though substantially identical tickets were available for purchase elsewhere.

29. A major component of Premium Seats' value, and viability as a company, is that purchases are secure and refunds are available for cancelled events. Such a benefit is not available to buyers who make purchases directly from other available resellers, throughout other direct online market sites such as craiglist.com or Facebook Marketplace, where there is no intermediary exercising authority and control over the exchange – and where tickets can be purchased without fees and other markups.

30. Plaintiff and members of the Class relied on, and were contractually entitled to, a refund upon cancellation of an event when purchasing their tickets using Premium Seats' services.

---

[4] https://www.premiumseatsusa.com/policy
[5] https://www.premiumseatsusa.com/faq

*Premium Seats' Response to the Covid-19 Crisis*

31. By March 2020, it became apparent that the United States was about to be hit hard by the Covid-19 virus. This impending crisis inspired fear and trepidation among consumers who were increasingly unwilling to venture into public or attend public gatherings. Accordingly, confidence in making event ticket purchases among Premium Seats' customers was rapidly deteriorating.

32. In response to the Covid-19 pandemic, Premium Seats updated its Premium Website to include a "COVID-19 IMPACT" statement addressing cancellations and postponements caused by the virus.[6]

33. In its statement, Premium Seats made the following announcement about events that were cancelled:

> If an event is **cancelled**, you will be notified. Orders will be updated as follows:
>
> 1) You will automatically receive a coupon for 120% of your original purchase
> 2) You have 7 days from notification to request a full refund less any delivery fees (if you purchased a package, also less any components already delivered or redeemed)

[7]

34. Without more information, Premium Seats' statement is unclear as to whether the consumer receives an automatic refund or must request a refund, or if the refund is a coupon or is cash back.

35. Regardless of the ambiguous refund statement, Premium Seats has not provided Plaintiff with a refund of a coupon or cash back for her tickets purchased for a cancelled event.

36. Premium Seats has collected, and consciously and intentionally continues to hold, funds, including fees, from ticket purchasers for cancelled or constructively cancelled events.

---

[6] https://www.premiumseatsusa.com/special-events/coronavirus-notice/
[7] *Id.*

6

37. Even though many thousands of events have been cancelled, Premium Seats wrongly refuses to classify events as "cancelled," allowing it to maintain dominion and control over even more funds which it has no legal right to possess or use for its own business purposes.

38. Plaintiff and other members of the putative class have requested refunds, but refunds have not been granted.

39. The Terms and the updates provided by Premium Seats as to the Covid-19 pandemic clearly entitle buyers to a full refund of their monies paid for tickets to events that were cancelled due to the Covid-19 pandemic.

40. Despite the fact that Plaintiff and the Class made their purchases while the refund policy was promised and in full force, Premium Seats has refused to honor that promise, shifting the burden of its corporate losses and potential future losses onto many thousands of its loyal customers.

### *Plaintiff's Use of Premium Seats*

41. On or about October 8, 2019, Plaintiff used Defendant's service to purchase four meet and greet passes to meet Billie Eilish at her concert scheduled to occur in Nashville, Tennessee on March 27, 2020.

42. Plaintiff paid approximately $10,080 for the meet and greet passes.

43. Plaintiff purchased tickets to attend the March 27 Billie Eilish concert separately from TicketMaster.

44. The event was cancelled.

45. TicketMaster, acknowledging that the event was cancelled, refunded Plaintiff for her concert ticket purchase.

46. Upon learning of the event cancellation, Plaintiff contacted Defendant on multiple occasions to request a refund. Defendant indicated that they were "working through thousands of orders," and asked Plaintiff to "please be patient with us."

47. As of the date of this Complaint, Plaintiff still has not received any refund.

48. When Plaintiff purchased the tickets through Defendant, her purchase was subject to the refund policy. Her event was cancelled, and Defendant has utterly failed to honor its policy.

## **CLASS ALLEGATIONS**

49. Plaintiff brings this class action under Rule 23 of the Federal Rules of Civil Procedure and seeks certification of the claims and issues in this action pursuant to the applicable provisions of Rule 23. The proposed class is defined as:

> All persons residing in the United States or its territories who used Premium Seats to purchase tickets to any event which was subsequently cancelled or constructively cancelled due to the Covid-19 pandemic, and who has not been issued any refund (the "Class").

50. Excluded from the Class is Defendant, its subsidiaries and affiliates, its officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representative, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

51. Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or division into subclasses after an opportunity to conduct discovery.

52. **Numerosity.** More than 10,000 events in the United States have been cancelled, postponed, or rescheduled, and Premium Seats facilitates ticket sales to the vast majority of events in the United States to its users. At a minimum, there are thousands of Class members, but very

likely many more, and joinder is impracticable. The exact size of the proposed class and the identity of all class members can be readily ascertainable from Defendant's records.

53. Commonality. There are questions of law and fact common to the Class, which questions predominate over any questions affecting only individual Class members. Common issues include:

    a. Whether there was a contract or implied contract between Plaintiff and Defendant, and if so, what provisions, if any, apply to Plaintiff's claims;

    b. Whether or not the extent to which Defendant's statements and representations regarding the refund policy are or constitute misrepresentations;

    c. Whether Defendant's failure to issue promised refunds constitutes a breach of contract, breach of implied contract, conversion, and/or unjust enrichment;

    d. Whether Defendant knew or should have known that in the event of widespread event cancellations it would be unable to honor the refund policy; and

    e. The nature of the relief, including equitable relief, to which Plaintiff and the Class are entitled.

54. Typicality. Plaintiff's claims are typical of the claims of the Class she seeks to represent. Plaintiff and all Class members were exposed to uniform practices and sustained injuries arising out of and caused by Defendant's unlawful conduct.

55. Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Further, Plaintiff's counsel is competent and experienced in litigating class actions.

56. Superiority. A class action is superior to any other available means for the fair and efficient adjudication of this controversy. The claims of Plaintiff and individual Class members

are small compared to the burden and expense that would be required to separately litigate their claims against Defendant, and it would be impracticable for class members to seek redress individually. Litigating claims individually would also be wasteful to the resources of the parties and the judicial system and create the possibility of inconsistent or contradictory judgments. Class treatment provides manageable judicial treatment which will bring an orderly and efficient conclusion to all claims arising from Defendant's misconduct. Class certification is therefore appropriate under Rule 23(b)(3).

57.     Class certification is also appropriate under Rule 23(b)(1), as the prosecution of separate actions by individual members of the Class would create the risk of adjudications with respect to individual class members that would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and substantially impair their ability to protect those interests.

58.     Class certification is also appropriate under Rule 23(b)(2), as Defendant has acted and/or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief appropriate for the Class.

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT
### (On Behalf of Plaintiff and the Class)

59.     Plaintiff incorporates the factual allegations above as if fully set forth herein.

60.     A contract was formed between Plaintiff and Class members on the one hand, and Defendant on the other, with respect to purchases made on Defendant's Premium Website.

61.     The contract was offered by Defendant and formed at the time Plaintiff and the Class accepted it by making ticket purchase(s).

62. The contract that governs the transactions at issue in this case includes the Terms and refund policy that was operative at the time of purchase.

63. Defendant had an obligation to conduct itself in accordance with the implied covenant of good faith and fair dealing.

64. Plaintiff and the Class performed their obligations under the contract by purchasing ticket(s) and rendering payment.

65. The ticket(s) purchased through Defendant's business became unusable and without value due to a cancellation or constructive cancellation.

66. Defendant breached the contract when it collected Plaintiff's funds but ceased providing full cash refunds, including fees, to cancelled or constructively cancelled events as required under its Terms, and again when Defendant refused to provide refunds to Plaintiff upon demand.

67. Defendant's breaches were knowing and willful and not the result of mistake or inadvertence.

68. Defendant's breaches unfairly disappointed the Plaintiffs' reasonable expectation of a refund.

69. As a result of Defendant's breach, Plaintiff and the Class members have been deprived of the contracts' benefits and damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Class)

70. Plaintiff incorporates the factual allegations above as if fully set forth herein.

71. In the alternative to Plaintiff's breach of contract claim set forth in her First Cause of Action, an implied contract was formed between Plaintiff and Defendant that included a promise

11

to honor the refund policy when Plaintiff made purchases of event tickets through Defendant's Premium Website.

72. Such implied agreement can be presumed from the acts of Plaintiff and Defendant because the agreement was formed under circumstances that evinced a mutual intent to contract.

73. Defendant offered Plaintiff and other Class members tickets and a promise to guarantee a full cash refund, including all fees paid, in the event of an event cancellation or constructive cancellation in exchange for payment from Plaintiff.

74. Plaintiff and the Class members accepted Defendant's offer by purchasing tickets from Defendant and remitting payment to Defendant.

75. Plaintiff and the Class members paid good consideration to Defendant in exchange for the event tickets, which was fully backed by Defendant's refund policy.

76. Plaintiff and the Class members fully performed on their obligations under the bargain.

77. Defendant breached the contract by receiving and retaining Plaintiff's and the Class members' payments, but refused to honor the refund policy with a full refund of all payments made, including fees.

78. As a result of Defendant's conduct, Plaintiff and other Class members have been damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

**CONVERSION**
**(On Behalf of Plaintiff and the Class)**

79. Plaintiff incorporates the factual allegations above as if fully set forth herein.

80. From the moment of cancellation or constructive cancellation, Plaintiff and the Class owned and had a right to immediately possess the funds in the amount that they paid to Defendant for tickets to events that were cancelled, including all fees collected.

81. The funds held by the Defendant are earmarked for each transaction in order to provide a refund to the buyer upon cancellation of the event, or to pass the funds to the Seller after the event has taken place.

82. Plaintiff held an immediate right to possession of the funds paid to Defendant following cancellation or constructive cancellation of the event(s), yet, Defendant continues to exercise control, dominion, or ownership over Plaintiff's funds, including all fees collected.

83. Defendant intentionally and substantially interfered with property belonging to Plaintiff and the Class by taking possession of it, refusing to refund it to Plaintiff, preventing Plaintiff and the Class from having access to it, and/or refusing to return it to Plaintiff after a demand was made for its return.

84. Plaintiff and the Class did not consent to Defendant's conduct in withholding their funds.

85. Defendant's exercise of dominion and control over Plaintiff's property was knowing and wrongful.

86. Plaintiff and the Class were harmed by Defendant's conduct.

87. The conduct of the Defendant was a substantial factor in causing this harm to Plaintiff and the Class.

88. As a result of Defendant's conduct, Plaintiff and other Class members have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

89. Plaintiff incorporates the factual allegations above as if fully set forth herein.

90. In the alternative to Plaintiff's breach of contract claim set forth in her First Cause of Action, by taking and retaining possession and control of funds paid by Plaintiff and the Class members, Defendant was enriched.

91. Plaintiff and the Class members suffered damages by way of Defendant's retention of funds paid for tickets to a cancelled or constructively cancelled event, including all fees assessed.

92. Plaintiff and the Class members therefore conferred a benefit upon Defendant, which benefit Defendant fully appreciated.

93. Defendant accepted and retained the benefit under circumstances that make it inequitable for Defendant to retain it without paying the value thereof.

94. Defendant has not provided appropriate or timely refunds. It is unconscionable to allow Defendant to retain the funds for its services, as well as the funds for the ticket sales, to events that were cancelled or constructively cancelled.

95. Defendant's enrichment was unjustified and wrongful, as the retention of funds continued after the event was cancelled, and it had no right to retain such funds and use them for its own benefit at the expense of Plaintiff and the Class members, who received no benefit from the purchase.

96. Defendant knew that Plaintiff and the Class members retained no benefit from the purchase, yet Defendant retained Plaintiff's and the Class members' funds anyway and diverted them for its own purposes without justification.

97. Plaintiff and the Class members are left without adequate remedy at law as a result of Defendant's unjust enrichment.

98. Defendant's actions in retaining Plaintiff's and the Class members' funds following the cancellation of the events for which the tickets were sold violate fundamental principles of justice, equity, and good conscience.

99. As a result of Defendant's wrongful conduct, Plaintiff and the Class have suffered damages in an amount to be determined at trial.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class, request the Court to:

(a) Certify the case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, designate Plaintiff as representative of the Class(es) and designate counsel of record as Class counsel;

(b) Order Defendant to provide actual damages and equitable monetary relief (including restitution) to Plaintiff and Class members and/or order Defendant to disgorge profits it realized as a result of its unlawful conduct;

(c) Order Defendant to pay punitive damages, as allowable by law, to Plaintiff and Class members;

(d) Declare Defendant's conduct unlawful and enter an order enjoining Defendant from continuing to engage in the conduct alleged herein;

(e) For both pre- and post-judgment interest at the maximum allowable rate on any amounts awarded;

(f) For costs of the proceedings herein;

(g) For reasonable attorneys' fees as allowed by statute or other authority; and

(h) Award such other relief as the Court deems appropriate under the circumstances.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

DATED: October 27, 2020

Respectfully submitted,

*/s/ Nicholas A. Colella*
Gary F. Lynch*
Jamisen A. Eztel*
Nicholas A. Colella (FL Bar No. 100294)
**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243
glynch@carlsonlynch.com
jetzel@carlsonlynch.com
ncolella@carlsonlynch.com

*Counsel for Plaintiff and Putative Class*

**Pro hac vice* applications forthcoming